UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| LUCILLE GREEN, ET AL | CIVIL ACTION |
| VERSUS | |
| JOHNSON RICHARDS & CO., ET AL | NO. 00-770-BAJ-CN |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days from the date of service of this Notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. The failure of a party to file written objections to the proposed findings, conclusions, and recommendation contained in a Magistrate Judge's Report and Recommendation within 14 days after being served with a copy of the Report shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge that have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in chambers in Baton Rouge, Louisiana, October 11, 2011.

**MAGISTRATE JUDGE CHRISTINE NOLAND**

| LUCILLE GREEN, ET AL | CIVIL ACTION |
|---|---|
| VERSUS | |
| JOHNSON RICHARDS & CO., ET AL | NO. 00-770-BAJ-CN |

## MAGISTRATE JUDGE'S REPORT

This matter is before the Court on the Motion to Set Aside and Vacate Default Judgment Pursuant to Fed. R. Civ. P. 60(b)(4) and 60(b)(6) (R. Doc. 184) filed by defendant, Jason Sunstein ("Sunstein"). Plaintiffs, Lucille Green ("Green"), Leland Holden, Salvador Gerardi, Joe Bridges, Eleanor Bankston, and William C. Bankston (collectively "plaintiffs"), have filed an opposition (R. Doc. 187) to this motion.

## FACTS & PROCEDURAL BACKGROUND

Green filed this suit on October 11, 2000, naming Tri-National Development Corporation ("Tri-National") and several others as defendants and alleging that she was entitled to recover damages for alleged securities fraud and RICO violations. Other plaintiffs subsequently joined the litigation. On October 30, 2000, plaintiffs filed an amended complaint, adding Sunstein, the Secretary and Vice President of Investor Relations for Tri-National, and several other executive officers and directors of Tri-National, as defendants to the suit.

On November 30, 2000, plaintiffs' counsel received a letter from George Freeman, III ("Freeman") of Stone, Pigman law firm confirming his representation of Tri-National and its executive officers and directors, including Sunstein. *See*, Exhibit 1 to plaintiffs'

opposition. The letter also documented the following agreement between plaintiffs' counsel and defense counsel:

> In return for my clients agreeing not to contest the sufficiency of service, while otherwise reserving all of their other rights, you have agreed, on behalf of the plaintiff, that my clients may have until December 22, 2000, to file responsive pleadings.

*Id.* Subsequent to that letter, Freeman litigated on behalf of Sunstein, Tri-National, and the other executive officers and directors by filing motions to dismiss pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) on December 22, 2000 and July 17, 2001. *See*, R. Docs. 7 and 34.

On March 7, 2002, Freeman and the Stone, Pigman law firm filed a motion to withdraw as counsel of record on behalf of Sunstein. *See*, R. Doc. 47. In that motion, Freeman provided the following address for Sunstein: Tri-National Development Corporation, 480 Camino Del Rio South, Suite 140, San Diego, California 92108. Freeman further stated, in that motion, that Sunsteian had been notified of all pending deadlines and court appearances by letter sent via certified mail on February 21, 2002, and that Sunstein could be reached through general counsel for Tri-National, Paul Goss, at (720) 981-2954. *Id.* The Certificate of Service attached to the motion certified that Sunstein and all counsel of record were served with copies of the motion. *Id.* The Court granted the motion to withdraw as counsel of record on March 12, 2002, and the Order granting the motion indicates that notice was mailed to Tri-National, plaintiffs' counsel, Freeman, and McBride. *See*, R. Doc. 48.

On January 8, 2003, the Rule 12 motions to dismiss filed on behalf of Sunstein, Tri-National, and the other executive officers and directors were granted as to the plaintiffs'

2

RICO claims and denied in all other respects. *See*, R. Doc. 70. On January 22, 2003, the Court issued an Order directing all defendants to serve responsive pleadings within forty (40) days of the Court's ruling on the motion to dismiss. *See*, R. Doc. 71.

On July 30, 2003, plaintiffs filed a "Motion for Entry of Default Pursuant to Rule 55(A) of the Federal Rules of Civil Procedure" on the basis that various defendants, including Sunstein, failed to answer the complaint after their Rule 12 motions were resolved against them. *See*, R. Doc. 99. On July 31, 2003, the Clerk of Court issued an Order granting entry of preliminary default against Sunstein and several other defendants, finding that they did not file any responsive pleadings after their Rule 12 motions were denied. *See*, R. Doc. 101. The Order states that notice was mailed to six specifically listed people as well as "all named defendants." *Id.*

On November 5, 2003, plaintiffs' counsel sent a letter to Sunstein to place him on notice of the plaintiffs' intent to file a Motion for a Default Judgment against him in accordance with Fed. R. Civ. P. 55(b)(2), which letter was sent to the same address that was used for service of process, *i.e.*, the Tri-National address referenced above. *See*, Exhibit 2 to plaintiffs' opposition. That letter, however, was returned to plaintiffs' counsel on the basis that it was unable to be delivered. *Id.*

On November 14, 2003, the Court entered a default judgment in favor of the plaintiffs and against various defendants, including Sunstein, on the basis that they had failed to file an answer as required by law after their motion to dismiss was denied, and they had not taken any action in the case since preliminary default was entered against them on July 31, 2003. *See*, R. Doc. 111.

Approximately seven and a half years later, on January 28, 2011, Sunstein filed the present motion, seeking to vacate the default judgment against him. Sunstein contends that the default judgment should be set aside because he was never served with notice of the entry of the preliminary default by the Clerk of Court or with the motion for default as required by Fed. R. Civ. P. 55(b)(2), which provision, in 2003, stated, in pertinent part, that "[i]f the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application [for default judgment] at least 3 days before the hearing." Fed. R. Civ. P. 55(b)(2). Sunstein's present motion was referred to the undersigned for a report and recommendation on September 13, 2011. *See*, R. Doc. 192.

## **LAW & ANALYSIS**

Fed. R. Civ. P. 55(c) provides that a court may set aside an entry of default for "good cause," and it may set aside a default judgment under Fed. R. Civ. P. 60(b). The undersigned has located three (3) cases in which the U.S. Fifth Circuit Court of Appeals has been confronted with a motion to set aside a default judgment based upon a failure to provide notice as required by Fed. R. Civ. P. 55(b)(2). In the first case, *Savoretti v. Rodriguez-Jiminez*, 252 F.2d 290 (5th Cir. 1958), the Fifth Circuit concluded that the district court erred in failing to set aside a judgment by default that had been entered without the notice required by Fed. R. Civ. P. 55(b)(2), and the default judgment was therefore vacated and the matter remanded for further proceedings. In reaching that conclusion, the Fifth Circuit only generally referred to Fed. R. Civ. P. 60(b) as its basis and did not indicate

whether it was relying upon a particular subsection of that provision.[1]

Subsequently, the Fifth Circuit rendered decisions in *Charlton L. Davis & Co., P.C. v. Fedder Data Center, Inc.*, 556 F.2d 308 (5th Cir. 1977) and *Turner v. Salvatierra*, 580 F.2d 199 (5th Cir. 1978), wherein it based its decisions to vacate default judgments on Fed. R. Civ. P. 60(b)(6). In both of those cases, the Fifth Circuit concluded that the default judgments should be vacated because of the failure to provide notice as required by Fed. R. Civ. P. 55(b)(2) and because the party moving to set aside the default judgment set forth a "meritorious defense" to the lawsuit.[2]

In support of his motion to vacate the default judgment against him, Sunstein has filed a declaration, wherein he indicates that, after he was named as a defendant in this litigation, he was instructed by his employer, Tri-National, to sign an engagement letter with the attorney that had been retained by the corporation, *i.e.*, Freeman and the Stone, Pigman law firm. *See*, Exhibit A to Sunstein's motion. Sunstein states that he did so in consideration for Tri-National's agreement to pay all attorney's fees and to take full

---

[1] The circuits are split as to whether the failure to provide notice as required by Rule 55(b)(2) renders a default judgment void, under Rule 60(b)(4), or just voidable, under Rule 60(b)(6). *See, Citizens Bank v. Parnes*, 2010 WL 1753296, **8-9 (6th Cir. 2010)(citing cases from various circuits that are split on the issue). While the Fifth Circuit's decision in *Savoretti* suggests that the failure to give notice might render a default judgment void under Rule 60(b)(4), the Fifth Circuit did not specifically rely upon Rule 60(b)(4) in rendering its decision in that case, and its subsequent decisions, discussed *infra*, indicate instead that the failure to provide notice as required by Rule 55(b)(2) renders a default judgment voidable under Rule 60(b)(6) since the Fifth Circuit specifically relies upon that provision in those cases.

[2] *See also, Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396 (5th Cir. 1981)(where the Fifth Circuit elected not to characterize a judgment as a default judgment or a judgment entered after a trial on the merits, noting that Rule 60(b) is applicable to both types of judgments. In reaching its decision that the Rule 60(b) motion to vacate should have been granted, the Fifth Circuit considered the fact that (1) the movants seeking to set aside the judgment asserted a meritorious defense, (2) they timely filed the motion to set aside the judgment within a "reasonable time" because it was filed within one (1) year of the judgment being entered and within twelve (12) days of the movants obtaining knowledge of the judgment; and (3) because a "confluence [ ] of unusual circumstances" resulted in the movants not being present at an evidentiary hearing where judgment was entered against them).

responsibility for any judgment or settlement in this matter without reimbursement from him. *Id.* Sunstein indicates that Freeman made an appearance on his behalf by filing motions to dismiss on December 22, 2000 and June 15, 2001.[3] While those motions were pending, however, Sunstein left employment with Tri-National in October 2001. Subsequently, on March 7, 2002, Freeman and the Stone, Pigman law firm withdrew as Sunstein's counsel of record, but notice of such motion and the Court's Order granting that withdrawal were sent to Sunstein at the Tri-National address. Sunstein contends that he therefore never received notice that Freeman had withdrawn from representing him. He also contends that, since all future motions, notices, and orders were sent to him at the Tri-National address, he did not receive notice that his motions to dismiss had been denied, that responsive pleadings on his behalf were due 40 days after January 8, 2003, that plaintiffs filed a motion for entry of preliminary default on July 30, 2003, and that the Clerk of Court granted entry of preliminary default against him on July 31, 2003. He further contends that he was not served with notice of the motion for default judgment as required by Rule 55(b)(2) since plaintiffs' November 5, 2003 letter providing him with notice of same was also sent to him at the Tri-National address. As a result, Sunstein argues that plaintiffs failed to comply with Fed. R. Civ. P. 55(b)(2), which is the basis for his request to vacate the default judgment against him.

The problems with Sunstein's motion are three-fold. First, it has been recognized that a plaintiff provides sufficient notice of an application for default judgment for purposes

---

[3] Plaintiffs do not dispute that the filing of such motions on Sunstein's behalf constituted an "appearance" in this litigation, which triggered the notice requirement of Fed. R. Civ. P. 55(b)(2). *See also, Sun Bank of Ocala v. Pelican Homestead and Sav. Ass'n*, 874 F.2d 274, 277 (5th Cir. 1989)(the filing of a motion to dismiss is normally considered to constitute an appearance, thus requiring compliance with the requirements of Rule 55(b)(2).

6

of Fed. R. Civ. P. 55(b)(2) by mailing a copy of that application to a defendant's last known address. *Motown Record Co., LP v. Murray*, 2007 WL 1521475 (W.D. La. 2007).[4] When Sunstein left employment with Tri-National in October 2001, he had a duty to inform Freeman, who was still enrolled as his counsel at that time, of his change of address. Because he did not do so, Freeman was unable to notify the Court (and opposing counsel) of Sunstein's new address when the motion to withdraw as counsel was filed, and as a result, plaintiffs' counsel was unaware of any change of address for Sunstein at the time that the default proceedings were taking place. It was not plaintiffs' counsel's responsibility to ensure that the addresses of all named defendants were updated and correct; plaintiffs' counsel acted reasonably in sending notices to Sunstein's last known address listed in the Court record.

Furthermore, even assuming that sending the notice to Sunstein's last known address did not satisfy the notice requirement of Rule 55(b)(2) because Sunstein did not actually receive notice of the pending motion for default judgment, Sunstein's motion to vacate should nevertheless be denied because he has not sufficiently demonstrated that he has a meritorious defense to plaintiffs' claims. Although Sunstein's declaration vaguely references the fact that, when he was Tri-National's Secretary and Vice President of Investor Relations, he had no authority to shape corporate strategy, and he had no involvement with either the negotiations leading to the execution of the promissory notes in question in this lawsuit or in the corporation's failure to pay such notes, the substance

---

[4] *See also, Charvenko v. Barbera,* 2011 WL 1672471 (W.D.N.Y. 2011), citing *Ann Taylor, Inc. v. Interstate Motor Carrier, Inc.*, 2004 WL 2029908 (S.D.N.Y. 2004)(The affidavit of service certifying that the motion for default judgment was served upon the defendant at his last known address proves compliance with the notice requirement of Rule 55(b)(2)).

of Sunstein's motion to vacate default judgment centers around the procedural issues relating to the alleged failure to provide him with notice of the motion for default judgment as required by Rule 55(b)(2). He asserts absolutely no legal arguments concerning the merits of his defenses in this litigation.[5]

Third and finally, even if Sunstein could demonstrate a meritorious defense to plaintiffs' claims, his motion should nevertheless be denied because it is untimely. A motion for relief from judgment under Fed. R. Civ. P. 60(b)(6) must be made "within a reasonable time." *See*, Fed. R. Civ. P. 60(c)(1); *Simmons v. Twin City Towing*, 2011 WL 1853282 (5th Cir. 2011)(holding that, "[i]n the absence of any known exceptional circumstances, nine years after the entry of judgment cannot be considered 'within a reasonable time' under any understanding of the phrase." Furthermore, even if the plaintiff had filed the motion within an acceptable time, relief under Rule 60(b)(6) is appropriate only in "extraordinary circumstances"); *McGrew v. McQueen*, 2011 WL 817525 (5th Cir. 2011)(Fed. R. Civ. P. 60(b)(6) requires that the motion be made "within a reasonable time," and a remedy is available "only if extraordinary circumstances are present" and its availability is "narrowly circumscribed").[6]

---

[5] *See, Murphy v. Simpson Dura-Vent Co., Inc.*, 2009 WL 458609 (W.D. La. 2009)(holding that an employer sufficiently demonstrated good cause to set aside a default judgment where the employer argued that the employee did not serve the employer for more than six months after the filing of the complaint, served the wrong company, and the employer immediately attempted to obtain an extension. The employer also immediately filed a motion to set aside the entry of default when it learned that an extension of time was unavailable. Further, the employer presented several "meritorious defenses" to the employee's claims).

[6] *See also,* 10A Fed. Prac. & Proc. Civ. §2687, n. 7 (3d ed. 2011)(discussing the Fifth Circuit's decision in *Savoretti* and noting that a default judgment should be set aside under Rule 60(b) if the defendant did not receive notice as required by Rule 55(b)(2), if the defendant has asserted a meritorious defense, and if the defendant acted quickly to cure the default).

Sunstein admits, in his declaration, that he received and signed an engagement letter to have Freeman represent him in this litigation on December 20, 2000. Thus, he was aware that this litigation was pending against him at that time.[7] He contends, however, that he did not receive any further notices from his attorney concerning this litigation after that date and that he was not aware of the default judgment rendered against him in November 2003. He argues that he should not be held liable in this matter since he and Tri-National had an agreement (of which plaintiffs, of course, were not privy) that Tri-National would handle the legal representation and indemnity of the employees who had been named as defendants in this matter. When Sunstein left Tri-National's employment in October 2001, however, he had an obligation to at least notify counsel for Tri-National and himself that he was no longer associated with Tri-National so that he could receive notice of any future filings in the litigation. Because he did not do so, the undersigned finds that his failure to receive notices concerning this suit is no one's fault but his own. A litigant, who has full knowledge that a suit is pending against them, cannot simply sit back for years (here, for eleven (11) years from 2000 to 2011) without taking any action to follow up on the status of the suit (regardless of what "agreements" they may have with their co-defendants as to who is "handling" the suit). *See, Associated Marine Equipment, LLC v. Jones*, 2011 WL 72191 (5th Cir. 2011)("[A] party has a duty of diligence to inquire as to the status of his case"); *Pryor v. U.S. Postal Service*, 769 F.2d 281, 287 (5th Cir. 1985); *Wilson*

---

[7] The fact that Sunstein has long been aware that this litigation was pending against him and that he could be a judgment debtor related thereto is also evidenced by the fact that, on December 20, 2001, Sunstein filed a Chapter 7 bankruptcy petition in the U.S. Bankruptcy Court for the Southern District of California, wherein he identified this lawsuit as a contingent liability and Green as a contingent creditor. *See*, Exhibit 3 to plaintiffs' opposition.

*v. Atwood Group*, 725 F.2d 255, 257-58 (5th Cir. 1984)(en banc).[8]  If they do so, it will be at their peril, as is evident from the entry of a default judgment in this suit.  Furthermore, plaintiffs indicate, in their opposition, that they initiated collection efforts against Sunstein in November 2005 with regard to the judgment he is seeking to vacate; as such, it is likely that Sunstein has had notice of the judgment against him at least since that time, which was nearly six (6) years ago.

While "[t]here is no hard and fast rule as to how much time is reasonable for the filing of a Rule 60(b)(6) motion" and courts have found periods of as little as a few months unreasonable, while finding periods as long as three (3) years reasonable, the determination is based upon the particular facts and circumstances of each case,[9] and the undersigned finds that the amount of time that has passed in this case since the entry of the default judgment (and Sunstein's likely knowledge of that judgment nearly six (6) years ago) is unreasonable.  Furthermore, even if Sunstein did not obtain knowledge of the default judgment in November 2005 as a result of plaintiffs' collection efforts, the undersigned nevertheless finds that Sunstein waited far too long to inquire about the status of his case and to thereafter file a motion to vacate the default judgment.  Sunstein has provided no plausible reason for his failure to follow up on the status of his case since he signed the letter retaining Freeman in 2000, and to allow him to vacate the default

---

[8] While it is true that a litigant's duty to inquire as to the status of his case does not apply for a client whose counsel withdraws without informing him, such duty would nevertheless apply to Sunstein because, although he did not receive notice that Freeman was withdrawing as his counsel, such lack of notice was due to Sunstein's own fault in failing to notify Freeman that he was no longer working for Tri-National, that his address was changing, and that all future correspondence should go to a new address. *Id.*, at **1, citing *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 403 (5th Cir. 1981).

[9] *Associated Marine*, at **1, n. 5; *First RepublicBank Fort Worth v. Norglass, Inc.*, 958 F.2d 117, 119 (5th Cir. 1992); *See also, Sudeikis v. Chicago Transit Auth.*, 774 F.2d 766, 769 (7th Cir. 1985).

judgment at this late juncture would significantly prejudice the plaintiffs.[10] Under the facts and circumstances of this case, the undersigned finds that relief from the default judgment entered in favor of the plaintiffs and against Sunstein, nearly eight (8) years after such judgment was entered, is not warranted under Fed. R. Civ. P. 60(b)(6).[11]

---

[10] *See, Rogers v. ITT Hartford Life and Acc. Co.*, 178 F.R.D. 476 (S.D. Miss. 1997), quoting *Federal Sav. & Loan Ins. Corp. v. Kroenke*, 858 F.2d , 1069-1070 (5th Cir. 1988)(The Fifth Circuit has repeatedly held that the courts generally look at three factors when ruling on a motion to set aside a default judgment under Rule 60(b): (1) "the extent of prejudice to the plaintiff; (2) the merits of the defendant's asserted defense; and (3) the culpability of the defendant's conduct"); *Vaughn v. Mobil Oil Exploration and Producing Southeast, Inc.*, 1990 WL 93859 (E.D. La. 1990), citing *FDIC v. Castle*, 781 F.2d 1101, 1104 (5th cir. 1986)(In determining whether Rule 60(b) relief is appropriate, the following factors are to be considered: (1) that final judgments should not be lightly disturbed; (2) that the Rule 60(b) motion is not to be used as a substitute for appeal; (3) that the rule should be liberally construed in order to achieve substantial justice; (4) whether the motion was made within a reasonable time; (5) whether – if the judgment was a default or a dismissal in which there was no consideration of the merits – the interest in deciding cases on the merits outweighs, in the particular case, the interest in finality of judgments, and there is merit in the movant's claim or defense; . . . (7) whether there are intervening equities that would make it inequitable to grant relief; and (8) any other factors relevant to the justice of the judgment under attack).

[11] *See, Killingham v. District of Columbia Center for Independent Living, Inc.,* 1998 WL 1148899 (D.D.C. 1998)(finding that the defendant was not a "diligent" client, nor was it "faultless," and therefore it could not rely upon its attorney's gross negligence in seeking relief pursuant to Rule 60(b)(6). While Rule 60(b)(6) permits a diligent client reasonably to rely on its counsel, it does not permit the party to remain ignorant of a pending matter in the hope that the matter will go away, or be "abandoned." Parties are expected to maintain communication with their counsel, and in the absence of any attempts to do so, the court will not relieve the defendant of its legal obligation. "This case is quite different from others in which the client diligently inquired of its counsel about a pending matter but was lied to or otherwise misled by assurances that the matter is being dutifully handled"); *Inryco. Inc. v. Metropolitan Engineering Co.*, 708 F.2d 1225, 1233-34 (7th Cir. 1983)("The defendants here were not diligent in pursuing this case and therefore would not prevail even if gross negligence qualified as another Rule 60(b) ground for relief, because courts allowing such relief uniformly require a diligent, conscientious client. Affidavits submitted by the defendants showed that they failed to follow the progress of the case and failed to regularly inquire of their lawyer or the court as to the case's current status . . . In the twenty months between the filing of the complaint and the default judgment, defendants contacted [counsel] fewer than half a dozen times, and at no time knew the precise procedural status of the case. Moreover, our thorough review of the record reveals that [counsel] did not actually mislead the defendants. The district court therefore found that the defendants apparently neither specifically asked [counsel] how the lawsuit was progressing nor found out for themselves. The defendants' neglect precludes Rule 60(b)(6) relief").

*See also, Snyder v. Barry Realty, Inc.*, 2003 WL 1342992 (7th Cir. 2003)(Even though dismissal was "unnecessarily harsh," in the court's view, the plaintiffs' attorneys failed to monitor the case both before and after the dismissal, and the district court properly considered the fact that the plaintiffs themselves should have been checking the docket and moving their case forward. The court noted that parties have often been held responsible for their attorneys' mistakes); *Spika v. Village of Lombard*, 763 F.2d 282, 286 (7th Cir. 1985)(stating that the failure to check the status of a case for six months does not warrant Rule 60(b)(6) relief; *Valadez v. Rydz*, 2008 WL 3876398 (7th Cir. 2008)(The plaintiff knew, in April

11

2005, that his counsel was going to move to withdraw but failed to make any inquiries into the status of his case until more than one year later); *Inryco, Inc. v. Metropolitan Engineering Co., Inc.*, 708 F.2d 1225 (C.A.Ill. 1983)(Even if counsel's negligence is an extraordinary circumstance warranting relief from default judgment under Rule 60(b)(6), relief was not warranted where the client itself was not diligent in pursuing the case and failed to follow progress or regularly inquire of counsel or the court as to the case's current status, and the client had virtually no contact with counsel for more than a year and counsel did not actually mislead the client); *Haynes v. Memmen*, 2009 WL 3837665 (D. Colo. 2009)(Injured party waited over three years after the Court had dismissed his claims to file a motion requesting the status of his case and over four years to bring a motion for reconsideration. The Order of Dismissal was sent to the injured party at his last known address. Rule 60(b)(6) relief was held not to be warranted); *Calcano v. Commissioner of Soc. Sec. Admin.*, 2008 WL 2262018 (M.D.Fla. 2008)(Plaintiff failed to demonstrate that he discharged his duty to maintain communication with his counsel, and upon unsuccessfully attempting to do so, inquire with the court about the status of his case; relief under Rule 60(b)(6) is not available to the plaintiff because attorney error must be addressed under Rule 60(b)(1), and the plaintiff failed to show the type of exceptional circumstances required for relief under Rule 60(b)(6)); *Saunders v. Goord*, 2007 WL 1434974 (S.D.N.Y. 2007)(The court declined to exercise its discretion to grant relief because the plaintiff had failed to allege sufficient "extraordinary circumstances" warranting relief under Rule 60(b)(6). Regardless of his attorney's conduct, the plaintiff's failure to inquire about the status of his own case, which had been dismissed without prejudice and remained closed for over four years, plainly showed that he had not brought his motion within a "reasonable time"); *Rodriguez v. Mitchell*, 252 F.3d 191, 201 (2d Cir. 2001)(three and one-half year delay unreasonable); *Orshan v. Macchiarola*, 105 F.R.D. 534 (D.C.N.Y. 1985)(refusing to grant Rule 60(b) relief where the defendant, who had not been mailed a notice by the court of the judgment entered against it, did not make a diligent effort to monitor the status of its lawsuit); *Bones v. DiaPaul*, 1986 WL 3806 (W.D.N.Y. 1986)(same); *Anderson v. Chevron Corp.*, 190 F.R.D. 5 (D.D.C. 1999)(Plaintiffs against whom summary judgment was entered were not entitled to relief from subsequent default judgment awarding defendant attorneys' fees, absent a showing of exceptional circumstances; plaintiffs had acquiesced in counsel's failure to keep them informed as to the status of the case, there was no evidence the plaintiffs were misled by counsel, and counsel's failure to oppose the fee motion was a strategic choice to which plaintiffs were bound); *Reinsurance Co. of Amer., Inc. v. Administrator of St. Ins.*, 902 F.2d 1275, 1278 (7th Cir. 1990)(finding that a client's "lack of diligence in following the course of this case," where client failed to inquire about the status of the case for over a year, precluded the client from demanding relief under 60(b)(6)); *Martin v. E.I. Du Pont De Nemours and Co.*, 1993 WL 96173 (N.D.Ill. 1993)("[W]e have no doubt that [the client's] failure to check on the present case for over thirteen months, whether he received notice of the dismissal or not, followed by a three month delay in filing the present motion, is insufficient under 60(b)(6)"); *Coleman v. Frierson*, 607 F.Supp. 1566 (N.D.Ill. 1985)(Relief from default judgment was not warranted on ground that counsel was exclusively to blame for misconduct giving rise to default judgment and defendants were unaware of counsel's conduct, where defendants took minimal interest in the progress of the suit from its inception and, although counsel was less than diligent and perhaps even negligent in communicating with the clients, there was no evidence that he actively misrepresented affairs in the face of an inquiry from either the individual defendants or the city defendant).

  *Contrast, Copeland v. IBEW Local No. 8,* 2006 WL 2946940 (N.D.Ohio 2006)(Rule 60(b)(6) relief granted where the client made "diligent attempts" to contact his counsel; yet, his counsel failed to inform him of the Court's granting of summary judgment to the defendant until after the time for appeal had passed, and the attorney's conduct constituted "gross negligence"); *L.P. Steuart, Inc. v. Matthews*, 329 F.2d 234 (C.A.D.C. 1964)(A plaintiff's suit was dismissed for failure to prosecute; court reinstated suit two years after its dismissal pursuant to Rule 60(b)(1) and (6) because personal problems of counsel had caused him to neglect the diligent plaintiff's case and to mislead the plaintiff. The plaintiff had made numerous inquires of his attorney, who had refused to answer such inquires and had occasionally assured the client that the case was proceeding).

**<u>RECOMMENDATION</u>**

For the above reasons, the Motion to Set Aside and Vacate Default Judgment Pursuant to Fed. R. Civ. P. 60(b)(4) and 60(b)(6) (R. Doc. 184) filed by defendant, Jason Sunstein, should be **DENIED**.

Signed in chambers in Baton Rouge, Louisiana, October 11, 2011.

                                         **MAGISTRATE JUDGE CHRISTINE NOLAND**